DECISION
{¶ 1} Relator, Doris L. Preising, commenced this original action requesting this court to issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying her an award for the scheduled loss of use of two fingers and the loss of use of her left hand due to the allowed conditions, and to enter an order granting said award.
 {¶ 2} Pursuant to Civ.R. 53(C), and Loc.R. 12(M), of the Tenth District Court of Appeals, this case was referred to a magistrate of this court to conduct appropriate proceedings. The magistrate has rendered a decision, including findings of fact and conclusions of law. (Attached as Appendix A.)
 {¶ 3} The magistrate concluded that relator failed to demonstrate that the commission abused its discretion by relying upon the medical report of Dr. Gerald Yosowitz. Dr. Yosowitz opined that any loss suffered by relator was due to pre-existing rheumatoid arthritis and not due to the allowed conditions. Therefore, the magistrate has recommended that this court deny the requested writ of mandamus.
 {¶ 4} No objections have been filed to the magistrate's decision.
 {¶ 5} Finding no error of law or other defect on the face of the magistrate's decision, we adopt the decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Writ of mandamus denied.
BOWMAN and WATSON, JJ., concur.
 IN MANDAMUS {¶ 6} Relator, Doris L. Preising, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her an award for the scheduled loss of use of two fingers and loss of use of her left hand due to the allowed conditions and ordering the commission to find that she is entitled to that award.
Findings of Fact:
 {¶ 7} 1. Relator suffered a work-related injury on January 26, 2000, when she fell at work. Her claim has been specifically allowed as follows: "colles fracture-closed, left; fracture of left radius head-closed and dislocation of metacarpophalan-left third finger." Relator's claim has been disallowed for: "aggravation of pre-existing arthritis."
 {¶ 8} 2. Relator began treating with Dr. Abi Afonja whose office notes from January 27, 2000 through August 14, 2000, are in the record. Relator first saw Dr. Afonja on January 27, 2000, complaining of pain and swelling in her left wrist. Relator also indicated that she had some soreness at the tip of her ring finger which she believed she also injured. On January 28, 2000, Dr. Afonja performed a closed reduction and external fixation of the comminuted intra articular fracture of the left distal radius. X-rays showed dorsal subluxation of the left ring finger. The post-operative diagnoses indicated as follows: (1) comminuted fracture left distal radius, and (2) dislocation tip left ring finger.
 {¶ 9} Dr. Afonja's post-operative notes indicate that relator saw him every two weeks for a period of six weeks. During that time, Dr. Afonja noted that relator was healing well, was working with range of motion exercises and that the pins and external fixator were removed from her hand. The office note dated March 28, 2000 indicates that relator is "improving in spite of the fairly severe arthritis that she has in the hands." Likewise, in his April 25, 2000 notes, Dr. Afonja noted that relator "is coming along somewhat slowly in part because of severe arthritis in her hands and wrists. She has increasing ROM of the wrist and residual swelling. She also has moderate stiffness in the MCP as well as the IP joints of the fingers particularly the index finger which was previously deformed as the result of severe arthritis. She's still not able to make a full fist but I suspect she was never able to do so even before the present surgery because of the arthritis."
 {¶ 10} Dr. Afonja's office notes dated May 23, 2000, June 23, 2000 and August 14, 2000, continue to indicate that relator was progressing fairly well with the range of motion of her wrist but that she still had significant stiffness in her fingers. Dr. Afonja continued to note relator's severe arthritis in her hands.
 {¶ 11} 3. Relator filed a motion on November 18, 2001, asking that her claim be additionally allowed for the aggravation of pre-existing arthritis, and the she be awarded a scheduled loss/loss of use award for the loss of two fingers due to ankylosis and for the loss of her left hand. Relator's motion was supported by the June 19, 2001 and October 10, 2001 reports of Dr. Peter S. Kibbe. In his June 19, 2001 report, Dr. Kibbe correctly noted relator's allowed conditions; however, in the body of his report he noted as follows:
 {¶ 12} "* * * An x-ray following the incident revealed a displaced fracture of the radial head and dislocation of the left 3rd finger. In addition, she suffered an injury to the 2nd or long finger. * * *
 {¶ 13} "She complains of severe stiffness of the wrist and she complains of various difficulties with the 3rd and long fingers. * * *
 {¶ 14} "* * * Examination of the 3rd digit reveals complete ankylosis of the PIP and DIP joints and effectively there is a complete ankylosis of the PIP and DIP joints of the long finger. The grasp is bizarre as she is unable to completely flex the MCP's of the 3rd and long fingers and completely unable to effectively flex the DIP and PIP joints of the 3rd and long fingers, thus, considerably weakening the grasp. * * *
 {¶ 15} "I believe that she has lost the use of two fingers of the left hand and this loss due to ankylosis creates a substantial difficulty considering the importance of the hand in her employment duties. This hand and wrist disability due to this injury would definitely cause an adverse vocational impact."
 {¶ 16} 4. Dr. Gerald Yosowitz was asked to review the medical records and to render an opinion on whether relator had suffered a loss of use of the third (long) finger and the second (index) finger of her left hand and loss of use of her left hand. (Clearly, the question posed to Dr. Yosowitz did not correctly delineate the allowed conditions.) Dr. Yosowitz noted that the X-rays showed a fracture of the distal left radius with deformity as well as degenerative changes. He also noted that Dr. Afonja found that relator had dislocated the DIP joint of her ring finger. With regards to the report of Dr. Kibbe, Dr. Yosowitz noted that he addressed not only the fracture of the left wrist but also injury to the third (long) finger as well as the index finger and that he found complete ankylosis in the DIP and IP joints of the left index and long fingers. Dr. Yosowitz indicated that he accepted the findings of the treating physicians but that he found that Dr. Kibbe's report was inconsistent with the described injury as there is no indication that relator had suffered an injury to the left long or index fingers based upon the allowed conditions. Furthermore, he noted that relator had severe arthritis involving multiple joints and fingers of her left hand. He concluded that the ankylosis noted by Dr. Kibbe is probably the result of the underlying and pre-existing rheumatoid arthritis. In conclusion, Dr. Yosowitz opined that there is "insufficient medical evidence to indicate that the alleged loss of use of two fingers of the left hand due to ankylosis and loss of use of the left hand was a direct and proximate result of the 1/26/00 industrial injury."
 {¶ 17} 5. Relator's application was heard before a district hearing officer ("DHO") on April 16, 2002. The DHO noted that relator's claim was specifically disallowed for aggravation of pre-existing arthritis and that the evidence relator presented to support that portion of her motion lacks specificity and was insufficient to support such a finding. Further, the DHO noted that there was no competent medical evidence to support relator's motion. Specifically, the DHO noted that Dr. Kibbe incorrectly stated that at the time of the injury relator also injured her left index and long/middle fingers. The DHO noted this was incorrect and that the initial medical records of Parma Hospital and from Dr. Afonja indicate that initially the only injuries were to the left wrist and left ring finger. As such, the DHO denied the motion in all respects.
 {¶ 18} 6. Upon appeal, the matter was heard before a staff hearing officer ("SHO") on May 21, 2001. The SHO vacated the prior DHO order yet denied relator's motion in its entirety. With regard to the request for the additional allowance, the SHO noted that relator had not produced sufficient documentation to establish that her pre-existing arthritis was aggravated and in what manner. With regard to her request for the scheduled-loss award due to ankylosis of two fingers, this was denied as follows:
 {¶ 19} "The request for a scheduled loss award due to ankylosis of two fingers of the left hand is denied based on the 8/28/01 opinion of Dr. Yosowitz that the ankylosis is the result of the rheumatoid arthritis and not the 11/26/00 [sic] injury. The request for a scheduled loss award due to loss of use of the left hand is denied as there is no proof that the claimant has lost all function in her left hand due to the allowed condition."
 {¶ 20} 7. Further appeal was refused by order of the commission reviewed June 6, 2002.
 {¶ 21} 8. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 22} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 23} Relator contends that the commission abused its discretion by relying upon the report of Dr. Yosowitz. Relator argues that Dr. Yosowitz did not examine her and that he relied upon medical evidence which the commission found to be inaccurate. Specifically, relator notes that Dr. Yosowitz indicated that he was accepting the findings of relator's treating physicians. For the reasons that follow, this magistrate finds that relator's argument is not well-taken.
 {¶ 24} R.C. 4123.57(B) provides, in pertinent part, as follows with regard to scheduled-loss awards:
 {¶ 25} "(B) in cases included in the following schedule the compensation payable per week to the employee is the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code per week and shall continue during the periods provided in the following schedule:
 {¶ 26} "* * *
 {¶ 27} "For the loss of a second finger, thirty weeks.
 {¶ 28} "For the loss of a third finger, twenty weeks.
 {¶ 29} "* * *
 {¶ 30} "For ankylosis (total stiffness of) or contractures (due to scars or injuries) which makes any of the fingers, thumbs, or parts of either useless, the same number of weeks apply to the members or parts thereof as given for the loss thereof.
 {¶ 31} "If the claimant has suffered the loss of two or more fingers by amputation or ankylosis and the nature of the claimant's employment in the course of which the claimant was working at the time of the injury or occupational disease is such that the handicap or disability resulting from the loss of fingers, or loss of use of fingers, exceeds the normal handicap or disability resulting from the loss of fingers, or loss of use of fingers, the administrator may take that fact into consideration and increase the award of compensation accordingly, but the award made shall not exceed the amount of compensation for loss of a hand.
 {¶ 32} "For the loss of a hand, one hundred seventy-five weeks."
 {¶ 33} The first question to be addressed is whether the report of Dr. Yosowitz constitutes some evidence upon which the commission could rely. For the reasons that follow, this magistrate finds that the report does constitute some evidence upon which the commission could rely.
 {¶ 34} First, although relator is correct to note that the question posed to Dr. Yosowitz did not properly frame the issue before him because he was asked to determine whether there was loss of use of the third (long) finger as well as the second (index) finger of the left hand and a loss of use of the left hand, Dr. Yosowitz, in reviewing the records of both treating physicians, Drs. Kibbe and Afonja, correctly noted that relator's claim was not allowed for any injury to the long/middle finger nor to the index finger. As such, although he accepted the findings of Dr. Kibbe regarding the stiffness and ankylosis of those two fingers, he did not accept Dr. Kibbe's ultimate conclusion that relator had suffered the loss of use of those fingers as part of the allowed conditions.
 {¶ 35} Secondly, it is equally clear that Dr. Yosowitz relied upon and accepted the findings of Dr. Afonja in reaching his determination that relator had not suffered a loss of use of two fingers due to the allowed conditions in the claim. In his office notes, Dr. Afonja had specifically noted relator's pre-existing arthritis and the fact that arthritis was hampering her recovery in terms of the range of motion of her injured ring finger. The fact that Dr. Yosowitz did not examine relator does not render his report invalid. Instead, he was required to accept the findings of the treating physicians and then was to render his own medical opinion as to the ultimate issue: whether relator has suffered the loss of use of one or more of the fingers of her left hand as a direct and proximate result of the allowed conditions in the claim. In that regard, Dr. Yosowitz, after accepting the medical findings of the treating physicians, concluded that any loss suffered by relator was due to the pre-existing rheumatoid arthritis and was not due to the allowed conditions. This magistrate finds that relator has not demonstrated that the commission abused its discretion by relying upon the medical report of Dr. Yosowitz as that report does indeed constitute some competent credible evidence upon which the commission relied in rendering its decision.
 {¶ 36} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying her applications seeking a loss of use award for two fingers on her left hand as well as the loss of use for the entire left hand. As such, this court should deny relator's request for a writ of mandamus.